VICTORY, J.,
dissents.
|TI dissent from the majority’s holding that the dismissal of the insureds during the trial on the merits of a personal injury suit did not terminate plaintiffs action against the insurer under the Direct Action Statute, La. R.S. 22:1269, and the language of the policy at issue. In this case, the plaintiff was injured by a front end loader. She sued Deere, the manufacturer of the front end loader, Smith’s Hardware, who rented the front end loader to plaintiffs employer, Harry and Claire Smith, who owned Smith’s Hardware as a partnership, and Hartford, the Smith’s insurer. Deere settled for a significant sum, and two weeks before trial, plaintiffs claims against Deere were dismissed. Over a year before trial, plaintiff entered into a high/low settlement agreement with the Smiths and Hartford. The settlement agreement stated that:
4. Neither the existence of this Agreement nor any action taken in accordance with its terms shall be construed in any way to prejudice the interests or rights of any Party to this Agreement. All terms, provisions, conditions, exclusions, causes of action, claims or benefits of the Parties that are not expressly released, waived or limited by this agreement are preserved.
Nowhere in the agreement did the parties agree that the Smiths would be dismissed from the lawsuit. No language provided that the plaintiff would proceed against | gHartford alone. Instead, after Hartford paid the $340,000 “low” end of the agreement, plaintiff proceeded to trial against both the Smiths and Hartford. On the third day of trial, in front of the jury, counsel for the Smith’s verbally moved to dismiss “personally ... Mr. Smith ... Mrs. Smith ... Mrs. Smith and their company” from the suit, further stating that Plaintiff did not “seek any damages against them personally.” Counsel for Hartford did not object. On the fourth day of trial, Hartford moved for a directed verdict and filed an exception of no right of action, arguing that the policy language obligated them to pay only “those sums that the insured becomes legally obligated to pay as damages” and that under the Direct Action Statute, the dismissal of the Smiths meant that no judgment could be rendered against the Smiths, i.e. they could not be legally obligated to pay any damages because they had been dismissed as parties. Both were denied, and the jury returned a verdict in favor of plaintiff for $9,429,758.91, assigning 15% fault to the Smiths. The court of appeal reversed, finding that the trial court legally erred in denying Hartford’s exception of no right of action. Soileau v. Smith True Value and Rental, 11-1594 (La.App. 3 Cir. 6/20/12), 95 So.3d 1214, 1219-21. I agree with the court of appeal.
The Direct Action Statute allows a plaintiff to directly sue the liability insurer of an alleged tortfeasor, even though there is no privity of contract between the plaintiff and the insurer. However, in order to take advantage of this procedural right of action, the plaintiff must follow the requirements of the statute, which does not allow the plaintiff to sue the insurer alone in the absence of certain limited circumstances, not applicable here. La. R.S. 22:1269(B)(1). The majority holds that the language of the statute requiring the action to “be brought against ... both the insured and the insurer jointly and in soli-do,” only requires that suit be filed against the insured and does not prohibit the plaintiff from later dismissing the insured and |sproceeding only against the insurer. In my view, such an interpretation renders *789 that provision of the statute meaningless. Prior to 1988, the statute provided a right of action against the insurer alone or against both the insurer and the insured. By Acts 1988, No. 934, the statute was amended to allow an action against the insurer alone only in limited circumstances. At the hearing before the House Civil Law and Procedure Committee, one of the drafters of the bill testified that “the purpose of the bill is to permit the trier of fact to see that there are two human beings involved, a plaintiff and an insured defendant, rather than just a victim and a company.” 1988 Regular Session, Minutes of Louisiana House of Representatives Civil Law and Procedure Committee Meeting re Act 934 on June 13, 1988. By allowing the plaintiff to name the insured along with the insurer as defendants in order to comply with the statute, but then dismiss the insured and- proceed at trial against the insurer alone, the majority has ignored the intent of the statute. In fact here, plaintiff’s attorney took advantage of the new procedural posture of the case to great effect, stating in closing argument to the jury that “Mr. Smith is out of this. We ... [plaintiff] has instructed me, we dismissed Ms ... Ms. Clara and Mr. Smith from the lawsuit and uh ... the only thing that we ... the only party that’s left in this thing is Hartford Insurance Company.” This is exactly what the legislature was preventing in Act 934.
In addition, the policy between the insured and the insurer obligated the insured to “pay those sums that the insured becomes legally obligated to pay as damages ...” (emphasis added). Once the insured was dismissed from the suit during the trial, the insured could not become “legally obligated to pay as damages” any amount to the victim. I disagree with the majority’s finding that the language obligating Hartford to “pay those sums that the insured becomes legally obligated to pay as damages,” means Hartford is still liable under the policy if the factfinder finds the | ¿insured legally liable for damages. Op. at 785-86. The policy specifically speaks of sums the insured becomes legally obligated to pay as damages, which is not the same as a mere finding of legal liability for harm. Further, in my view, the entire discussion regarding whether plaintiff intended to release the Smiths from liability in the settlement agreement is irrelevant. What is relevant is the legal effect of the dismissal “personally [of] ... Mr. Smith ... Mrs. Smith ... and their company” in open court before the jury. I totally disagree with the majority’s conclusion that “the facts and circumstances of this case clearly show that Plaintiff intended to effect only a limited dismissal of the Smiths, continuing the suit for a determination of the Smith’s legal liability ...” and that “the appellate court failed to give effect to Plaintiffs intent to only partially dismiss the Smiths and to continue the suit for a determination of the Smith’s liability for damages, ...” Op. at 785-86 and 787. There was no mention of a limited or partial dismissal, if such a thing is even possible in this circumstance.
Further, unlike some of the cases cited in the majority opinion, the Smiths remained trial defendants for two days of trial before plaintiffs evidently surprised everyone by dismissing them from the case. Just because Hartford did not object does not mean they consented to being sued alone under the Direct Action Statute as the dismissal of plaintiffs was advantageous to, and established, their defense under the policy. And, the dismissal of the Smiths was advantageous to them as Hartford’s insureds, and Hartford had a duty to protect and defend them.
In addition, I disagree with the majority’s reasoning regarding La. C.C. art. *790 2203, which formerly provided that an obli-gee who remitted a debt in favor of one solidary obligor, without expressly reserving his rights against the others, was deemed to have forfeited the entire obligation, but which now provides that when | ^partial payment is received, solidary liability is preserved unless it is expressly renounced. The majority reasons that “the legislature must have intended these provisions to apply to an insurer and its insured,” and in applying La. C.C. 2203 to this case, reasons that in dismissing the Smiths, it was not necessary for plaintiffs to expressly reserve her rights to proceed against the insurer. Op. at 786-87. I disagree that La. C.C. art. 2203 has anything to do with the Direct Action Statute and the requirement that both the insured and the insurer be sued, or that La. C.C. art. 2203 can override the policy language which obligates the insurer to pay only the damages that the insured is found legally obligated to pay.
Finally, I dissented in Rollins v. Richardson, 02-0556 (La.12/4/02), 833 So.2d 921, 925, in which this Court reversed a trial court’s grant of summary judgment in favor of the insurer, where the insured was dismissed from the lawsuit and the insurer argued that, because the policy only covered damages that the insured becomes “legally obligated to pay,” the insurer’s indemnification obligation had ceased because the insured had been dismissed with prejudice. In my view, the plaintiffs created a policy defense when they released the insureds with prejudice, even though they failed to realize it at the time. 833 So.2d at 925. This case presents an even stronger case for dismissal of the insurer than Rollins, where in consideration for being dismissed from suit, the insureds “assigned transferred, and subrogated unto plaintiffs ... any claims or rights against Allstate ... pursuant to any policy issued to us or for our benefit.” Contrary to Rollins, the settlement agreement here made clear that the “[a]ll of the terms, provisions, conditions, exclusions, endorsements, and other limitations of the Policies, and all rights, causes of action, claims or benefits of the parties that are not expressly released, waived or limited by this Agreement are preserved.” Hartford did not expressly waive this defense in the | ^settlement agreement.
At the very least, this Court should vacate the jury verdict and remand for a new trial with instructions to the trial court to disallow the jury being told that the Smiths were no longer in the lawsuit.
For all of the above reasons, I respectfully dissent.